**QUITTNER et al. v. MOTION PICTURE PRODUCERS & DISTRIBUTORS OF AMERICA, Inc., et al.**

Circuit Court of Appeals, Second Circuit.

April 9, 1934.

L. HAND, Circuit Judge, dissenting.

———◇———

Graham & Reynolds, of New York City, for appellants.

Cravath, de Gersdorff, Swaine & Wood, and Gabriel L. Hess, all of New York City, for appellees.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellants have appealed from a judgment of the United States District Court for the Southern District of New York entered upon a dismissal of their complaint at the end of their case. In this application they seek, pursuant to sections 832, 834, title 28 U. S. Code (28 USCA §§ 832, 834), to prosecute their appeals in forma pauperis. Permission so to do is granted to a citizen of the United States, in civil or criminal cases, upon the order of the court, without being required to prepay fees or costs or to pay for the printing of the record in the appellate court or to give security for costs. The affidavit justifying the entry of such an order must satisfy the court that, because of the poverty of the petitioner, he is unable to pay the costs of his appeal or to give security for the same, and that he believes that he is entitled to the redress he seeks in such appeal. He must set forth briefly the nature of his appeal. This the petitioners have done in their petition.

The record is voluminous and prohibitive for appellants to print. The affidavit of the appellant Quittner shows his impoverished state and financial inability to pay for the printing of the record or to give security for costs. There are 6,000 pages of testimony and a great quantity of documentary evidence. It appears in his statement of facts and in the opinion rendered by the court below[1] and counsel's certificate that the appeal is taken in good faith with reasonable expectation of success. It is a suit for treble damages for violation of the provisions of the Clayton Act § 4 (15 U. S. C. § 15 [15 USCA § 15]).

The attorneys for appellants are said to be interested in the outcome, because of a contingent interest in the proceeds for their professional services rendered and to be rendered, and therefore it is said they should file a pauper oath to justify the order prayed for. Their agreement with their clients does not require them to pay the costs or printing expenses. Such an agreement would violate section 274 of the New York Penal Law (Consol. Laws N. Y. c. 40) and be against public policy and, indeed, would constitute a champertous agreement. In the Matter of Gilman, 251 N. Y. 265, 167 N. E. 437, 440. As there stated, "There is to be no barter of the privilege of prosecuting a cause for gain in exchange for the promise of the attorney to prosecute at his own expense."

In a case where the court has required such an oath by the attorney (U. S. ex rel. Randolph v. Ross, 298 F. 64, 33 A. L. R. 728 [C. C. A. 6]), the District Court rule required such an affidavit by the attorney who prosecuted the case on a contingent fee basis. There the statute of the state of Tennessee, where the cause of action was prosecuted (Act of 1899, c. 173; Shannon's Code 1917, § 3175, notes 5–10), did not make such an agreement unlawful. The court found the giving of cost bonds generally by attorneys not to be unethical. There is similar authority in the Ninth Circuit. Chetkovich v. United States, 47 F.(2d) 894 (C. C. A.); also Boyle v. Great No. Ry. Co., 63 F. 539 (C. C.

---

[1] Orally.

Wash.), and Feil v. Wabash Ry. (C. C.) 119 F. 490. In each case the attorneys had a contingent contract, and it was held that the plaintiff was not entitled to sue as a poor person upon an affidavit showing the poverty of the litigant only, but that the attorney must also file a like oath or go security for costs. In Clark v. United States (D. C. W. D. Mo.) 57 F.(2d) 214, in a well-reasoned opinion, it was held that a pauper affidavit by an attorney who represented the pauper on the contingent contract was unnecessary as a condition precedent to the prosecution of the action. We are in accord with the reasons set forth in that opinion.

An attorney having a contingent interest in a litigation, as payment for his services, is in a different situation from one having a direct interest in the recovery. Attorney's services, in his professional capacity, are subject to the restrictions placed upon him by the rules of ethics of his profession. He may not or should not be permitted to do more than give his services upon the prospect of success. He should never be called upon nor promise to finance the litigation, either by paying the expenses or the printing charges. In New York state to do so would run counter to the statute declaring such conduct champertous. There is nothing in the statute which requires the attorney to make such an affidavit. The humane thought underlying the statute is to assist the poor and afford an opportunity to prosecute their just claims where, if they met the costs of litigation, it would be prohibitive. It would conflict with the phrase of the statute and surely with its spirit to say that not only must the litigant who sues show himself to be a pauper, but that his attorney must be found in the same category. The statute was intended for the benefit of those who are too poor to give security for costs; it was not intended to compel pauper lawyers to represent them; it is an affront to the dignity of the profession to think otherwise.

The corporation may not succeed in this motion, for it is not a citizen. The individual has shown reason and justification for his petition, and the motion will be granted as to him. Three copies of the stenographer's minutes and copies of the exhibits should be furnished.

Motion granted accordingly; denied as to appellant corporation.

L. HAND, Circuit Judge (dissenting).

So far as I can find, it is established by all the well-considered cases that, whenever no champertous agreement is involved, an attorney prosecuting an action on a contingent basis must under this statute show that he also is too poor to print the appeal papers. United States ex rel. Randolph v. Ross, 298 F. 64, 33 A. L. R. 728 (C. C. A. 6); Chektovich v. United States, 47 F.(2d) 894 (C. C. A. 9); Boyle v. Gt. Northern Ry. Co. (C. C.) 63 F. 539; Feil v. Wabash Ry. Co. (C. C.) 119 F. 490; Silvas v. Arizona Copper Co. (D. C.) 213 F. 504. He is regarded as one of the beneficiaries, really a part owner of the cause of action, and falls within the rule that all beneficiaries must join in the oath. Clay v. Southern Ry., 90 F. 472 (C. C. A. 6); Volk v. Sturtevant Co., 99 F. 532, 533 (C. C. A. 1); Reed v. Pennsylvania Co. (C. C. A.) 111 F. 714. In United States ex rel. Payne v. Call, 287 F. 520 (C. C. A. 5), the attorney had agreed to pay the expenses of the suit at the time of his retainer, and that was concededly champertous. Clark v. United States (D. C.) 57 F.(2d) 214, is in frank disagreement with the general rule, and rests upon a distinction between an attorney and other beneficiaries which is not apparent to me. There would be nothing champertous in the attorneys' defraying the cost of an appeal in this case, and indeed if the client is as poor as he says, I cannot see how it can be prosecuted even on typewritten papers unless they do so in part. I agree of course that they could not agree to pay the expenses of the litigation as a consideration of their retainer. But if they did not do so, and if, as they lawfully might, they had a contingent interest in the recovery, it is not the law of New York that advances voluntarily made by them to protect that interest are champertous. Weeks v. Gattel, 125 App. Div. 402, 109 N. Y. S. 977, affirmed 193 N. Y. 681, 87 N. E. 1129; In re Gilman, 251 N. Y. 265, 167 N. E. 437. I can see no reason for refusing to follow the uniform rule in other Circuit Courts of Appeal, or why a lawyer who has made himself in effect a part owner of the cause of action, should enjoy an immunity which other persons in the same case do not have.